# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

**FILED**
APR 13 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Seizure of )
All monies, funds, monetary instruments, stock, )
bonds, securities, and all other property valued at ) Case No. 4:17MJ134 DDN
up to $221,900.00 from Bank of America personal )
checking account 325065993581 in the name of )
Adee Dascalo )

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

**I, Christopher Moss, being duly sworn depose and say:**

**I am a Task Force Officer with the Drug Enforcement Administration, and have reason to believe that there is now certain property namely**

All monies, funds, monetary instruments, stock, bonds, securities, and all other property valued at up to $221,900.00 from Bank of America personal checking account 325065993581 in the name of Adee Dascalo

**which is**

subject to forfeiture under Title 18, United States Code, Sections 981(a)(1) & 982(a)(1), Title 21, United States Code, Sections 853 & 881(a) and Title 28, United States Code, Section 2461, and therefore, is subject to seizure under Title 18, United States Code, Section 981(b) & 982(b)(1) and Title 21, United States Code, Sections 853(e)&(f) and 881(b) concerning a violation of Title 18, United States Code, Section 1956 and Title 21, United States Code, Section 841.

The funds identified herein are subject to civil forfeiture without regard to their traceability to criminal activity because they are contained in an account into which identical traceable property has been deposited and therefore may be forfeited as fungible property under Title 18, United States Code, Section 984.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

Continued on the attached sheet and made a part hereof.    X  Yes ___ No

**Signature of Affiant**, Christopher Moss

Sworn to before me, and subscribed in my presence

April 13, 2017
**Date and Time Issued**

at St. Louis, Missouri
City and State

Honorable David D. Noce, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Christopher Moss, your affiant, am a Task Force Officer of the Drug Enforcement Administration of the United States Department of Justice, St. Louis, Missouri, and, being duly sworn, state:

### I. APPLYING OFFICER

1. I am a Task Force Officer of the Drug Enforcement Administration ("DEA"), United States Department of Justice ("DOJ"). As such, I am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been a DEA Task Force Officer since 2009. Prior to my DEA Task Force assignment, I was employed as a sworn police officer with the City of Overland for eleven years. Prior to that, I was employed as a sworn police officer with the City of Kirkwood for five years. During the course of my law enforcement career, I have participated in numerous investigations involving controlled substances. During my tenure as a Task Force Officer, I have been the Affiant on multiple affidavits, to include Title-III wiretap affidavits. During my tenure in law enforcement, I have been involved in numerous investigations involving sophisticated drug trafficking organizations ("DTO"). Based on my training, experience, and participation in controlled substance investigations, I am familiar with the methods of operation of drug traffickers. I have participated in numerous drug investigations which have resulted in the seizure of cocaine, heroin, MDMA (ecstasy), marijuana, methamphetamine, and other controlled substances. I am familiar with and have used normal methods of investigation including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants,

1

the utilization of undercover agents, and the use of court-authorized wire intercepts. I am also familiar with federal criminal laws, particularly those laws relating to narcotics. Additionally, I am part of an experienced team of narcotics investigators that have participated in numerous drug trafficking investigations utilizing various investigative techniques. I am familiar with the methods employed by large scale narcotics organizations in attempts to thwart detection by law enforcement, including but not limited to the use of cellular telephone technology, counter surveillance techniques, false or fictitious identities and addresses, money laundering techniques, and coded communications and conversations.

## II.  INTRODUCTION

3. This affidavit is submitted in support of an application for the issuance of a seizure warrant for the following property:

   a. All monies, funds, monetary instruments, stock, bonds, securities, and all other property valued at up to $221,900.00 from Bank of America personal checking account **325065993581** in the name of Adee DASCALO (the "BOA Account"); and

   b. All monies, funds, monetary instruments, stock, bonds, securities, and all other property valued at up to $99,990.00 from Patelco Credit Union account **6069229-15** in the name of Adee DASCALO (the "Patelco Account").

4. As an experienced and trained narcotics investigator, it is your Affiant's opinion that probable cause exists to believe that the funds sought to be seized in this application are subject to forfeiture as property traceable to proceeds of drug trafficking in violation of Title 21, United States Code, Section 881 and/or as property traceable to property involved in violations of Title 18, United States Code, Section 1956 (money laundering).

5. As set forth in further detail below, Menahem DASCALO has admitted to depositing $8,000.00 in proceeds from his methamphetamine trafficking operation (the "Drug Proceeds") into an account for MD Electric at Bank of America ending in 2268 (the "MD Electric Account"). A financial analysis demonstrates that, after that deposit was made, numerous debits

2

and credits were processed through the MD Electric Account with the apparent purpose to conceal the nature, source, location, ownership, and control of the Drug Proceeds, thereby making the funds with which the Drug Proceeds were commingled subject to forfeiture. After the funds were commingled, a portion of those funds were transferred to the BOA Account, and a portion of those funds were further transferred to the Patelco Account. The sums transferred to the BOA Account and the Patelco Account are therefore subject to civil and criminal forfeiture under Title 18, United States Code, Sections 981(a)(1)(A) and 982(a) because they are traceable to property involved in money laundering in violation of Title 18, United States Code, Section 1956 and/or are property traceable to the proceeds of drug trafficking in violation of Title 21, United States Code, Section 841 and thereby subject to forfeiture until Title 21, United States Code, Section 881(a)(6).

6. The statements provided herein are based in part on information provided by DEA personnel, including but not limited to Special Agents, Task Force Officers, Investigators, and your Affiant's own experience and background as a DEA Special Agent. The information included in this affidavit is based on your Affiant's personal knowledge and the investigative sources of your Affiant and other members of the investigative team.

### III. PROBABLE CAUSE TO BELIEVE A CRIME HAS BEEN COMMITTED

7. During January 2015, DEA St. Louis initiated an investigation into the methamphetamine trafficking and money laundering activities of multiple individuals in the St. Louis, Missouri area. The investigation, supported by source information and law enforcement intelligence, disclosed that this particular methamphetamine trafficking organization was responsible for the distribution of multi-pound quantities of methamphetamine on a monthly basis.

8. On April 10, 2016, based on Confidential Source ("CS") information, law enforcement activity at a local automotive shop in St. Louis, Missouri, resulted in the seizure of

3

approximately 65 pounds of methamphetamine (gross weight) and the arrest of nine individuals, including Menahem DASCALO and eight co-conspirators. The arrests were effected immediately following the off-load from DASCALO'S Ford F350 pick-up truck, which was parked inside the garage where the methamphetamine was located and seized. A related warrant execution and consent searches resulted in the additional seizure of $110,000 U.S. Currency ("USC") from a money courier, $45,315 USC from a storage facility, and $78,020 USC from DASCALO's Bank of America safe deposit box. Additionally, one day after DASCALO'S arrest and at his direction, DASCALO's wife, Adee DASCALO, made a cash withdrawal of $40,000 and then transferred $500,000 from their MD Electric Account, through her personal Bank of America checking account (ending in 0108), and into her parents' (David and Sara PARNES) personal account (ending in 8079) in an apparent attempt to conceal the illicit funds from the U.S. government. These funds have since been seized by DEA for forfeiture to the United States.

9. Subsequent to DASCALO'S arrest and the seizure of his Ford F350 pick-up truck (used to transport the methamphetamine from California to Missouri), members of the investigative team conducted an inventory search of the vehicle and located a suitcase containing DASCALO'S clothes and other personal items. Seized from inside the suitcase was a Bank of America checkbook for the MD Electric Account. According to DASCALO, who was given his Miranda warning and agreed to cooperate, he and his wife are the owners of MD Electric Recycling, Inc. and the Ford F-350 pick-up truck registered in the company's name. DASCALO admitted to his participation in this drug conspiracy and criminal enterprise and admitted to receiving the 65 pounds of methamphetamine in California and driving it to Missouri. DASCALO stated they had just finished off-loading the methamphetamine when the law enforcement officers arrived. He informed your affiant that he had transported loads of methamphetamine from

4

California to Missouri for monetary compensation on approximately two other occasions in the past and he admitted to transporting drug proceeds from Missouri to California on approximately four occasions.

10. In response to questions from investigators, DASCALO also admitted to comingling drug proceeds with legitimate funds in his business checking account and to using his business name to open a safe deposit box to conceal drug proceeds. DASCALO told investigators that he deposited $8,000 USC from drug proceeds into his business checking account at Bank of America in California after returning from St. Louis. However, a review of bank records for his MD Electric business account, supported by bank video at the teller window, shows DASCALO actually made the $8,000 cash deposit on December 1, 2015, at the Bank of America branch in Clayton, Missouri, before leaving St. Louis.

## IV. PROBABLE CAUSE TO BELIEVE THAT THE PROPERTY TO BE SEIZED IS SUBJECT TO FORFEITURE

*Laundering of Drug Proceeds Through the MD Electric Account*

11. Bank records confirm that on December 1, 2015, Menahem DASCALO deposited approximately $8,000.00 in USC (the "Drug Proceeds") into the MD Electric Account. As set forth above, DASCALO admitted in an interview with members of the investigative team that these funds constituted proceeds of his methamphetamine trafficking organization. At the time of the deposit, the balance in the MD Electric Account was approximately $158,567.42.

12. A financial analysis indicates that, after the deposit of the Drug Proceeds, a series of transactions occurred in the MD Electric Account with the apparent purpose to conceal the nature, source, location, ownership, and control of the Drug Proceeds. For example, between December 1, 2015 and December 31, 2015, approximately 21 debits, including interaccount transfers and cash withdrawals, were made from the MD Electric Account in amounts ranging

from approximately $25.00 to $31,000.00, for a debit total of approximately $136,558.79. Transfers were made to numerous counterparties, including American Express and Bank of Stockton. Cash withdrawals during that time period totaled approximately $119,000.00. Within that same time period, five credits were made to the MD Electric Account, in amounts ranging from $1,281.00 to $110,766.55, for a credit total of approximately $123,999.55. At the end of December 2015, the balance of the account was approximately $144,437.08.

13. A similar pattern of activity persisted during the first nine months of 2016. Between January 1, 2016 and September 12, 2016, approximately 62 debits, including numerous interaccount transfers and cash withdrawals, were made from the MD Electric Account in amounts ranging from $2.70 to $500,000.00, for a debit total of approximately $1,000,992.70. Transfers and payments were made to several other counterparties, including American Express and Citi Card. Cash withdrawals during that time period totaled approximately $193,450.00. Within that same time period, 18 credits were made to the MD Electric Account, in amounts ranging from approximately $20.00 to approximately $350,478.12, for a credit total of approximately $1,080,897.60. During this time period, the balance in the MD Electric Account was as high as approximately $559,343.87 and as low as approximately $166.19. At no time during that period, however, did the balance of the MD Electric Account drop to zero. This pattern of activity is strongly indicative of an attempt to conceal and disguise the nature, source, location, ownership, and control of the Drug Proceeds, which, as a result of the foregoing activity, have been so commingled with the other funds in the MD Electric Account that they cannot be divided without difficulty.

14. As a result, all funds in the MD Electric Account as of September 12, 2016 were involved in the laundering of the Drug Proceeds, making them subject to forfeiture as property

6

involved in money laundering. The balance of the MD Electric Account as of September 12, 2016 was approximately $221,910.95.

### *Transfer of Funds Involved in Laundering to the BOA and Patelco Accounts*

15. On September 13, 2016, Adee DASCALO opened the BOA Account and transferred $221,900.00 into the BOA Account from the MD Electric Account, constituting nearly the total balance of the MD Electric Account. The MD Electric Account was subsequently closed on September 22, 2016.

16. On January 10, 2017, Adee DASCALO opened the Patelco Account. DASCALO deposited $99,990.00 into the Patelco Account using a check written on the BOA Account. There were no intervening credits to the BOA Account before the transfer of funds to the Patelco Account other than the accumulation of interest, which likewise is traceable to the transfer from the MD Electric Account, in which the money laundering activity occurred. There have not been any debits from the Patelco Account since the transfer from the BOA Account. As such, the funds sought hereby to be seized from the Patelco Account are traceable to property involved in money laundering.

17. During an interview on November 17, 2016, DASCALO admitted to investigators that he told his wife to move their money. DASCALO explained that while talking to investigators on the night of his arrest, he asked if he could use his cell phone to call his wife. He stated that while talking to his wife in the presence of the arresting agents, he told her to move their money. DASCALO stated that because he was arrested in possession of 65 pounds of methamphetamine, he knew that the government would go after his money whether it was legal or not. DASCALO stated he told his wife to move the money to prevent it from being seized by the government.

18.     According to the DEA case agents (your Affiant and Special Agent David Wilmsmeyer), because DASCALO was cooperating on the night of his arrest, the agents handed him his cell phone, checked to verify the number he was dialing, and listened to DASCALO's side of the conversation. According to the agents, DASCALO told his wife something to the effect, "I'm in St. Louis", "I got in trouble", "I'll probably never see you or the kids again", and "I need you to move that material tomorrow." "Material" is believed to have been code for money. Based on the coded conversation, it was clear to investigators that DASCALO's wife knew why DASCALO went to St. Louis and that he was telling her to move their money to prevent its being seized by the government. These facts further support your affiant's belief that the property to be seized is subject to forfeiture as property traceable to property involved in money laundering.

V.     **STATUTORY AUTHORITY FOR SEIZURE AND FORFEITURE**

19.     Based on the above, I have probable cause to believe that the property set forth in paragraph 3 is subject to criminal and civil forfeiture under Title 18, United States Code, Sections 981(a)(1)(A) and 982(a) and Title 28, United States Code, Section 2461 because it is property traceable to property involved in money laundering in violation of Title 18, United States Code, Sections 1956, and/or that a portion thereof is subject to criminal and civil forfeiture under Title 21, United States Code, Section 881(a)(6) as property involved in drug trafficking in violation of Title 21, United States Code, Section 841. The property is therefore subject to seizure under Title 18, United States Code, Sections 981(b) and 982(b).

20.     The funds identified herein are subject to civil forfeiture without regard to their traceability to criminal activity because they are contained in an account into which identical traceable property has been deposited and therefore may be forfeited as fungible property under Title 18, United States Code, Section 984.

21. Because of the fungible and/or readily movable nature of the property identified herein for seizure, your affiant respectfully submits that a restraining order under Title 21, United States Code, Section 853(e) would be inadequate to assure the availability of the identified property for forfeiture and that a seizure warrant is therefore authorized under Title 21, United States Code, Section 853(f).

## VI.     REQUEST FOR SEALING

22. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and seizure warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organization's drug trafficking and money laundering activities and not all of the targets of this investigation will be searched at this time. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.